The plaintiffs complained for damages for the nonfulfillment of a contract of affreightment between Goldsboro and Liverpool, alleging that the defendant agreed to transport five hundred bales of cotton for plaintiffs between those points at a rate of sixty-nine and a half cents per one hundred pounds and afterwards declined to do so, but charged eighty-nine and a half cents, which latter amount plaintiffs paid under protest, and brought suit to recover the difference between eighty-nine and a half cents and sixty-nine and a half cents.
Defendant admitted that its agent at Goldsboro quoted a rate of sixty-nine and a half cents on 20 October, 1891, and that plaintiffs accepted it, but allege that this rate was quoted by a mistake of a telegraph operator, as appears in the evidence.
The plaintiffs introduced the following paper, the genuineness of which was admitted:
"GOLDSBORO, N.C. 20 October, 1891.
"Mr. Borden: Good until Saturday; can place five hundred bales Goldsboro to Liverpool at sixty-nine and a half cents per one hundred pounds. November sailing.
"69 1/2 accepted. C. M. LEVISTER.
"A. B."
It was proved that C. M. Levister was the local agent of the defendant at Goldsboro and was the usual person through whom freight rates were communicated to cotton dealers and others in Goldsboro. *Page 419 
Defendant introduced S. G. Freer, the operator in the office of J. H. Drake, general freight agent at Richmond, Va., and proved that by direction of said J. H. Drake, on 19 October, 1891, he sent from Richmond, Va., to the relay station, Keysville, Va., the following telegram:
"RICHMOND, VA., 19 October, 1891.(572)
"C. M. Levister, Goldsboro, N.C.
"Good until Saturday night; can place five hundred bales Goldsboro to Liverpool eighty-nine and a half cents.
"J. H. DRAKE."
This was sent to J. A. Thompson, operator at Keysville. The telegraph line was operated by Richmond and Danville Railroad Company. Mr. Thompson testified that he was the operator at Keysville and that he received this dispatch, but by some mistake, which he could not account for, the message was received by him and sent to Goldsboro in the following form:
"RICHMOND.
"C. M. Levister: Good until next Saturday night; can place five hundred bales Goldsboro to Liverpool sixty-nine and a half cents.
"J. H. DRAKE."
Mr. J. H. Drake testified that he was the general freight agent of the Richmond and Danville Railroad Company in October, 1891, and alone authorized to make rates for ocean shipments, etc. That on 19 October, 1891, he authorized the transmission of the rate of eighty-nine and a half cents, Goldsboro to Liverpool.
Local agents are not authorized to give rates for transportation to foreign ports. They must apply to me. Upon cross-examination the witness testified that he sent the rates through the local agents; that such is the custom, unless merchant applies to him direct.
C. M. Levister testifies that "he was in October, 1891, agent at Goldsboro; that he received telegram No. 3, quoting rate sixty-nine and a half cents, on 19 October, and on 20 October made the offer, Exhibit No. 1, which was accepted by Arnold Borden at that time. Borden delivered the first lot of cotton 26 October, 1891, and then on to 31 October. I issued him a bill of lading at eighty-nine and a half cents. I notified him before any cotton was delivered that we (573) could not take cotton at sixty-nine and a half cents per one hundred pounds, and that there was an error in the rate as first quoted.
"On 20 October I sent following telegram to J. H. Drake: *Page 420 
"`GOLDSBORO, 20 October, 1891.
"`J. H. Drake, Richmond:
"`Arnold Borden accepts room and rate, 69 1/2 cents, for five hundred bales cotton, Goldsboro, N.C. to Liverpool, England. Advises engagement number, etc. Also wire quick if we can offer room for five hundred more bales at same rate.
"`C. M. LEVISTER.
"`9:30 A. M. F. C. M. P.
`10:50 P.M.'
"And on 21 or 22 October I received this reply:
"`C. M. Levister:
"`Your wire of the 20th: We have no record whatever of having quoted 69 1/2-cent rate on cotton from Goldsboro to Liverpool. Give me full information. Answer.
`J. H. DRAKE.'
"On the next day I received this telegram:
"`23 October, 1891.
"`C. M. Levister, Goldsboro, N.C.:
"`Telegram of the 19th quoted rate of 89 1/2 cents per hundred pounds to Liverpool on cotton, and not 69 1/2. We cannot contract for cotton at less than 89 1/2 cents.
"`J. H. DRAKE.'
"This telegram of 22d is first positive information I had that the 69 1/2 cent rate was a mistake.
"I don't remember telling plaintiff anything on the 21st. As (574) soon as I received this telegram (No. 6), I called Borden's attention to it. It is dated 22 October. I showed it as soon as I received it. I might not have received it until late on 22d, and showed it next morning. When I received this message of 22d, and showed it to Borden, I notified him for the first time that the 69 1/2 rate was a mistake, and I would not receive it at less than 89 1/2."
The defendant asked his Honor to charge that there was never a contract or a coming together of the minds of plaintiffs and defendant to ship cotton at 69 1/2 cents per one hundred pounds, to Liverpool, but that as the error was that of defendant's agent, the defendant was obliged to indemnify plaintiffs against actual loss. That as plaintiffs had not shown the price at which the cotton was sold, and had not shown or attempted to show any loss, they were entitled to recover nominal damages only. That defendant was not obliged to pay plaintiffs any profit plaintiffs would have made on the reduced price for freight on cotton. *Page 421 
His Honor refused the instructions, and charged the jury that the plaintiffs were entitled to recover the difference as claimed in the complaint between 89 1/2 cents per one hundred pounds and the rate quoted by Levister of 69 1/2 cents per one hundred pounds on five hundred bales, the amount being admitted to be $ _____.
The defendant excepted from the refusal to charge and to the charge as given.
The issues and responses were as follows:
"1. Did the defendant contract with plaintiffs on 20 October, 1891, to receive and ship five hundred bales of cotton to Liverpool at 69 1/2 cents per one hundred pounds, as alleged by plaintiffs?"
"Yes."
"2. Was this contract made by defendant's agent at Goldsboro at the rate of 69 1/2 cents in consequence of a mistake made by defendant's operator at Keysville in transmitting a telegram, as alleged (575) by defendant?"
"Yes."
"3. Did defendant refuse to receive and ship said cotton at 69 1/2 cents?"
"Yes."
"4. What damage are plaintiffs entitled to recover?"
"$483.39."
There were no exceptions to issues.
It is conceded that the local agent of the defendant at Goldsboro made a written offer to ship for the plaintiff five hundred bales of cotton to Liverpool in November, 1891, and that the said agent was authorized to make such a proposal on the part of the defendant, and that plaintiff at once accepted this offer, his acceptance being also in writing. Furthermore, it seems to be conceded that the said agent plainly and unequivocally expressed what he understood to be the price to be charged by the defendant company for the transportation of the cotton, and there was no misunderstanding between the plaintiff and the agent as to any of the terms of the alleged contract.
Now it is evident that, if the agent is considered, not as the mere mouthpiece of the defendant corporation, through whom the intention of its higher officers in this matter was to be simply communicated to the plaintiff, but as its authorized contracting agent — its alter ego in this affair — there was no error or mistake at all, much less one that would prevent the written proposal and its written acceptance from constituting *Page 422 
a valid contract, by the plain terms of which each party would be bound. In this view of the matter there was no variance between the intention of the defendant and the expression of that intention. The (576) contracting agent expressed in unequivocal language exactly what he intended to express. The plaintiff accepted the offer thus made to him. The defendant cannot escape liability on this contract by asserting that its agent would not have so conducted himself if he had known at that time what he was afterwards informed of. And it might well be insisted on the part of the plaintiff that, in the absence of notice to the contrary, he had a right to assume that that agent had power to act for his principal in this matter, and that defendant should not be allowed to dispute that authority.
Passing by that question and assuming, for the sake of argument, that the local agent at Goldsboro was the mere mouthpiece or spokesman of the defendant in this matter, and that plaintiff knew this fact, then we have here a variance between the intention of the proposer (the defendant) and the expression of that intention. There was an error in the expression of the defendant's intention, but that error was unknown to the plaintiff. He had no good reason to suspect that the writing submitted to him did not correctly express the intention of the defendant. He did not "snap up" an offer which he knew or suspected was erroneously expressed. He merely accepted a plainly expressed proposition. In the view of the matter we are now taking, the question, then, is: If, in the expression of the intention of one of the parties to an alleged contract, there is error, and that error is unknown to and unsuspected by the other party, is that which was so expressed by the one party and agreed to by the other a valid and binding contract, which the party not in error may enforce? The law is well settled, says Mr. Lawson
in his work on Contracts, sec. 206, that a man is bound by an agreement to which he has expressed his assent in unequivocal terms, uninfluenced by falsehood, violence or oppression, and it judges of an agreement between two persons exclusively from those expressions of their intention which are communicated between them. And Wharton, in his (577) work on the same subject, sec. 196, quotes from Tamplin v. James, L. R., 15 Ch. Div., 215, this general rule, as he denominates it: "Where there has been no misrepresentation, and where there is no ambiguity in the terms of the contract, the defendant cannot be allowed to evade the performance of it by the simple statement that he has made a mistake. But," he adds, "where a proposal evidently contains a mistake, an acceptor, by snapping at it, will not be permitted to take advantage of the mistake." In section 202a he announces the rule thus: "A unilateral mistake of expression of one party cannot be set up by him as a ground for rescinding a contract or for resisting its enforcement, *Page 423 
when his language was accepted by the other party in its natural sense. But when the blunder made by the proposer is obvious, an acceptor will not be allowed, by catching it up, to take an unfair advantage." An essential bilateral error as to the nature of a contract avoids it, if based upon such error, but a unilateral error will not have that effect. Bishop Contracts, secs. 701 and 702. "It would open the door to fraud if such a defense was to be allowed. It is said that it is hard to hold a man to a bargain entered into under a mistake, but we must consider the hardship on the other side." Tamplin v. James, supra. We must consider also that "one of the remarkable tendencies of the English Common Law upon all subjects of a general nature is to aim at practical good rather than theoretical perfection, and to seek less to administer justice in all possible cases than to furnish rules which shall secure it in the common course of human business." 1 Story E. Jur., sec. 111.
We think, therefore, that all evidence in regard to plaintiff's purchase of the cotton was irrelevant. He had a valid contract for its shipment at 69 1/2 cents. His rights thereunder could not be affected by a notice that the defendant's agent had been misinformed, as we have seen.
Hence, we need not consider the exception taken by the defendant to the admission of exclusion of evidence relating to that (578) part of the controversy. Under the law as we hold it to be, it being admitted that the plaintiff had been required to pay more than the contract price for the shipment of his cotton, he was entitled, as his Honor held, to recover the difference between the sum so paid and the contract price.
Affirmed.